# IN THE UNITED STATES DISTRICT COURT
# FOR THE SOUTHERN DISTRICT OF MISSISSIPPI
# HATTIESBURG DIVISION

**BITUMINOUS CASUALTY CORPORATION**                                                            **PLAINTIFF**

**v.**                                          **CIVIL ACTION # 2:07cv354-KS-MTP**

**SMITH BROS. INC., et al.**                                                         **DEFENDANTS**

## MEMORANDUM OPINION AND ORDER

This cause is before the Court on the motion for summary judgment [Doc. #57] filed by Plaintiff Bituminous Casualty Corporation ("BCC"). BCC seeks a declaratory judgment holding that it owes neither indemnity nor a duty to defend to Defendant David Ducksworth. Ducksworth and Defendant Smith Brothers Inc. ("Smith Bros.") have been sued by Doris Buckley and several members of the Buckley family (the "Buckley Defendants") in Mississippi state court. In that proceeding, the Buckley Defendants allege that Ducksworth negligently crashed into their vehicle while driving a truck owned by Smith Bros, Ducksworth's erstwhile employer. This Court is now presented with the question of whether Ducksworth qualifies as an insured under either of the Smith Bros.' BCC policies. For reasons to follow, the Court concludes that Ducksworth lacked both express and implied permission from Smith Bros. to drive the truck and that Ducksworth was not acting within the scope of his employment at the time of the collision. As a result, Ducksworth was not an insured under either policy and BCC's motion for summary judgment should be **granted**.

## I. BACKGROUND

The two BCC policies in question are a Commercial Automobile Policy (the "Automobile Policy") and a BCC Commercial Umbrella Policy (the "Umbrella Policy"). *See generally* Pl.'s Exh. B pt. 1[Doc. #57-3] (October 21, 2008); Pl.'s Exh. B pt. 2 [Doc. #57-4]. Under the Automobile Policy, an insured is defined as "[a]nyone . . . while using with [Smith Bros.'] permission a covered 'auto' [Smith Bros.] own[s], hire[s], or borrow[s] . . . ." Pl.'s Exh. B pt. 1 at 16. The Automobile Policy binds BCC to "pay all sums an 'insured' legally must pay because of 'bodily injury' or 'property damage.' " The Umbrella Policy expands the group of individuals defined as insureds. *See* Pl.'s Exh. B pt. 2. The Umbrella Policy defines insureds as any Smith Bros.' employee "but only for acts within the scope of their employment by [Smith Bros.] or while performing duties related to the conduct of [Smith Bros.'] business." *Id.* at 20.

Ducksworth was not named as an insured under either policy. In addition, the parties agree that Ducksworth did not receive express permission from Smith Bros. to drive the truck. On the contrary, it is undisputed that Smith Bros. prohibited Ducksworth – along with any other employee who did not possess a valid driver's license – from driving the truck. Def.'s Exh. E at 58 [Doc. #57-7] (October 21, 2008).

Smith Bros. allowed a number of its employees to drive the truck. Pl.'s Exh. D at 46 [Doc. #57-6] (October 21, 2008). Employees with valid driver's licenses could generally use the truck, but only to transport themselves and other Smith Bros. employees to and from work. Def.'s Exh. H at 16-17 [Doc. #57-10] (October 21, 2008); *accord* Def.'s Exh. G at 27 [Doc. #57-9] (October 21, 2008). Smith Bros. did not permit its employees to drive the truck for any other purposes, to any other destinations, or with any non-Smith Bros. employees aboard. *Id.*

On the day of the collision, a Smith Bros. employee named Sam Hales was initially

2

driving the truck.  Ducksworth was among the passengers ostensibly receiving a ride home from work.  *See* Pl.'s Exh. D.  When the truck reached the home of Gene Brown, one of the employees receiving a ride home, Hales suddenly became ill.  *Id.* at 69.  Rather than waiting at Brown's home for assistance, Hales opted to allow Ducksworth to drive en route to Ducksworth's home. *Id.* at 69-71.  Hales made this decision even though he knew Smith Bros. had prohibited Ducksworth from driving.  *Id.* at 70.  The collision with the Brewer Defendants ensued shortly after Ducksworth began driving.  Pl.'s Exh. D at 72-74.

BCC filed the instant suit to secure the declaratory judgment against Smith Bros., Ducksworth, and the Buckley Defendants on December 12, 2007.  BCC filed the pending motion for summary judgment on October 21, 2008.  The Buckley Defendants oppose the motion.  [Doc. #62] (October 31, 2008).  Smith Bros. filed a response to the motion which, in effect, sides with BCC.  [Doc. #64] (November 4, 2008).

## II. STANDARD OF REVIEW

"Under the *Erie* doctrine, federal courts sitting in diversity apply state substantive law and federal procedural law."  *Gasperini v. Ctr. for Humanities, Inc.*, 518 U.S. 415, 427 (1996); *see also Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938).

### A. Federal Procedural Law

Summary judgment is appropriate when the evidence before the Court shows "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law."  FED R. CIV. P. 56(b).  A fact is "material" if proof of its existence or nonexistence would affect the outcome of the lawsuit.  *Anderson v. Liberty Lobby, Inc.*, 477 U.S.

3

242, 248 (1986). A dispute about a material fact is "genuine" if the evidence is such that a reasonable fact finder could render a verdict for the nonmoving party. *Id.* There can be no genuine issue as to a material fact when a party fails "to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-23 (1986). This is true "since a complete failure of proof concerning an essential element of the nonmoviing party's case necessarily renders all other facts immaterial." *Id.* at 323.

"[A] party seeking summary judgment always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting *Anderson*, 477 U.S. at 247). "[I]f the movant bears the burden of proof on an issue, either because he is the plaintiff or as a defendant he is asserting an affirmative defense, he must establish beyond peradventure *all* of the essential elements of the claim or defense to warrant judgment in his favor." *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).

If the moving party fails to meet its "initial burden, the motion must be denied, regardless of the nonmovant's response." *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994). If the moving party can meet the initial burden, the burden then shifts to the nonmoving party to establish the existence of a genuine issue of material fact for trial. The nonmoving party must show more than "some metaphysical doubt as to the material facts," *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.,* 475 U.S. 574, 586 (1986), and cannot satisfy its burden with

"conclusory allegations [or] unsubstantiated assertions." *Little*, 37 F.3d at 1075. "[T]he nonmovant must go beyond the pleadings and designate specific facts showing that there is a genuine issue for trial." *Id.*

In evaluating the evidence tendered by the parties, the court must accept the evidence of the nonmovant as credible and draw all justifiable inferences in its favor. *Anderson,* 477 U.S. at 255. While courts will "resolve factual controversies in favor of the nonmoving party," an actual controversy exists only "when both parties have submitted evidence of contradictory facts." *Little*, 37 F.3d at 1075.

### B. State Substantive Law

The parties agree that Mississippi substantive law governs this claim. *See* Pl.'s Br. at 7 [Doc. #58] (October 21, 2008); Def.'s Br. at 6 [Doc. #63] (October 31, 2008); *see generally In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 206 (5th Cir. 2007) (deferring to the parties' agreement on which state's substantive law controlled), *cert. denied by* 128 S. Ct. 1230. To determine Mississippi law, the Court must first determine whether "any final decisions of the Mississippi Supreme Court are dispositive." *Centennial Ins. Co. v. Ryder Truck Rental*, 149 F.3d 378, 382 (5th Cir. 1998). Where, as here, there are no Mississippi Supreme Court cases on point, the Court's task is to make an *Erie* guess by predicting how the Mississippi Supreme Court would rule based on the facts in the case at bar. *Id.* The United States Court of Appeals for the Fifth Circuit has outlined the process for making an *Erie* guess when applying Mississippi law:

> We start by determining whether or not any final decisions of the Mississippi Supreme Court are dispositive. If no such holdings exist, we predict how that tribunal would rule. We base our forecast on (1) decisions of the Mississippi Supreme Court in analogous cases, (2) the rationales and analyses underlying

> Mississippi Supreme Court decisions on related issues, (3) dicta by the Mississippi Supreme Court, (4) lower state court decisions, (5) the general rule on the question, (6) the rulings of courts of other states to which Mississippi courts look when formulating substantive law and (7) other available sources, such as treatises and legal commentaries. Absent evidence to the contrary, we presume that the Mississippi courts would adopt the prevailing rule if called upon to do so. We must never forget that we are emphatically not permitted to do merely what we think best; we must do that which we think the Mississippi Supreme Court would deem best.

*Id.* (internal citations and quotation marks omitted). The court's role in making an *Erie* guess is not "to alter existing law or to change direction." *Jackson v. Johns-Manville Sales Corp.*, 781 F.2d 394, 397 (5th Cir. 1986) (en banc), *overruled on other grounds by*, 499 U.S. 225 (1991).

## III. APPLICATION AND ANALYSIS

### A. Whether Ducksworth was an Insured Under the Automobile Policy

BCC has the burden of producing evidence that Ducksworth had neither express nor implied permission to use the truck and therefore was not an insured under the Automobile Policy.

"Permissive use of automobiles is divided into two categories under Mississippi law." *Nationwide Mut. Ins. Co. v. Dunning*, 252 F.3d 712, 717 (5th Cir. 2001). "First, permission may arise if a vehicle owner gives restricted permission to a permittee, and the use of the vehicle is within the boundaries of the owner's restrictions." *Id.* Here, it is undisputed that Smith Bros., the owner of the vehicle, did not expressly give permission – restricted or otherwise – to Ducksworth to drive the vehicle. *See, e.g.*, Def.'s Exh. C at 93 [Doc. #57-5] (October 21, 2008) (Ducksworth testified at his deposition that he was explicitly told by Smith Bros.' management before the crash that he was not permitted to drive the truck). Consequently, this first type of permissive use does not apply.

"The second category pertains to a permittee's unrestricted use of an insured automobile." *Dunning*, 252 F.3d at 717. "Unrestricted use" for the purposes of this second category, is not applied in its literal sense. *See id.* at 719. Accordingly, a permittee can have unrestricted use even in instances in which the "owner places restrictions on the vehicle's use." *Id.* at 717. To have unrestricted use in the sense relevant under Mississippi law, the permittee must have "broad and unfettered domination" over the vehicle. *Id.* If the permittee has broad and unfettered domination of the vehicle, then a third party driving the vehicle with the permittee's permission, may have the owner's implied permission despite the owner's express prohibition of such use. *See id.* at 717-20. In such instances, the third party driver will be deemed to have the implied permission of the owner if the driver's "operation of the vehicle served some purpose" of the permittee. *Id.* at 718.

Under Mississippi law, courts are to "review the particular facts of each case to determine whether the permittee exercised sufficient authority and control over the owner's vehicle" to constitute broad and unfettered domination. *Dunning*, 252 F.3d at 720. Accordingly, this Court will review the applicable caselaw to determine how the Mississippi Supreme Court would likely rule based on the facts of this case. *See, e.g.*, *Dunning*, 252 F.3d 712; *U.S. Fid. & Guar. Co. v. Stafford*, 253 So. 2d 388 (Miss. 1971), *overruled on other grounds*, *State Farm Mut. Auto. Ins. Co. v. Mettetal*, 534 So. 2d 189 (Miss. 1988).

In *Dunning*, the court found broad and unfettered domination because the permittee: (1) chose the car at the dealership; (2) made monthly car payments on the vehicle; (3) kept her own set of keys to the vehicle; (4) drove the car to school, after-school activities, work, and social outings; and (5) apart from a restriction that she not drive around with teenagers, she was free to

7

use the car on a daily basis as she saw fit. *Id.* at 719. The court reasoned that, based on those facts, the owner had – in effect – purchased the car for the permittee's benefit alone. *Id.*

In *Stafford*, the Court found that the permittee had broad and unfettered domination over the vehicle because: (1) on numerous instances, various third parties had used the car based on the permittee's permission; (2) the owner knew of those uses but did not object to them; (3) the permittee helped make payments on the car; (4) the permittee used the car to go to school and left the car at school while he was there; (5) the permittee used the car at night for dates; (6) the permittee used the car to go back and forth to work and kept the car at work while he was there; (7) the permittee had purchased mag wheels for the car; and (8) the permittee kept his own set of car keys for the vehicle. 253 So. 2d at 392.

BCC has produced evidence that Hales had far less authority and control over the vehicle in question than did the permittees in *Dunning* and *Stafford*,. For example, Hales was not the sole Smith Bros. employee authorized to drive the truck; any employee with a driver's license could do so. Pl.'s Exh. D at 46. The Smith Bros. employees took turns driving the truck. *Id.* Smith Bros. restricted use of the truck to trips from work to and from the employees' homes. Pl.'s Exh. H at 16-17 [Doc. #57-10] (October 21, 2008); *accord* Pl.'s Exh. G at 27 [Doc. #57-9] (October 21, 2008) (employees driving the truck had to "either go to the yard and fuel up for another day or go straight home"). Smith Bros. permitted no other use of the vehicle; for example, the person operating the vehicle at any given time could not transport any non-employee. *Id.* Smith Bros. did not give permission to any of the drivers to authorize others to drive; no unlicensed employee could drive the vehicle. Pl.'s Exh. G at 26; Pl.'s Exh. E at 58 [Doc. #57-7] (October 21, 2008). Smith Bros. communicated this rule to its employees,

8

(including Ducksworth) and did not know of or permit violations of the rule. Pl.'s Exh. G at 58-59.

Based on this evidence, BCC has met its burden under the summary judgment standard. The evidence indicates that Smith Bros. purchased the truck for the benefit of numerous employees and to be used by several employees. Moreover, Smith Bros. announced and enforced fairly rigid guidelines for use of the truck.

Since BCC has met its burden, it is incumbent on the Buckley Defendants to establish a genuine issue of material fact. The Buckley Defendants have restricted their arguments to legal issues, however, and have alerted the Court's attention to no additional evidence that conflicts with the evidence BCC produced. The Buckley Defendants have not demonstrated, for example, that Hales contributed to the purchase of the vehicle, maintained his own set of keys to the truck, or used the truck for purposes other than transporting Smith Bros. employees. As a result, the Court finds that Hales lacked broad and unfettered control over the truck and that Ducksworth therefore did not have implied permission from Smith Bros. to drive the truck.

The Buckley Defendants argue that Ducksworth confronted an unforeseen emergency when Hales became ill and that Ducksworth therefore had the implied authority of Smith Bros. to drive the truck. In support of this argument, the Buckley Defendants cite a decision by the Supreme Court of Colorado and other non-Mississippi cases. Def.'s Br. at 14 (citing *Heckman v. Warren*, 124 Colo. 497 (1951)). Critically, the Mississippi Supreme Court has never adopted a "medical emergency" exception to the permissive user rules. Under the *Eerie* doctrine, this Court is not empowered to create new state substantive law. *See Jackson*, 781 F.2d at 397. Moreover, the facts of this case do not lend themselves to a finding that there was an emergency.

The uncontradicted evidence in the record is that Hales began to feel ill when he pulled into the yard of Gene Brown, a Smith Bros.' employee. Hence, the truck was not moving and both the employees and truck were in a safe location. Accordingly, even if Mississippi law contained an emergency exception, this Court would conclude that there is no genuine issue as to the lack of an emergency in this case. As a result, the Court concludes that Hales, a restricted permittee, could not and did not render Ducksworth an insured under the policy by allowing him to drive the truck.

### B. Whether Ducksworth Was an Insured Under the Umbrella Policy

Next, BCC must meet its burden of establishing that Ducksworth was not an insured under the Umbrella Policy. The Buckley Defendants contend that Ducksworth was an insured under the Umbrella Policy because he drove the truck while acting within the scope of his employment (or while performing duties related to the conduct of his employment) with Smith Bros.

"[T]he question of whether, in the particular instance, the servant was acting within the scope of his employment, if there is no conflict in the facts, is a question of law for the court." *Barmore v. Vicksburg, S. & P. R. Co.*, 38 So. 210, 211 (Miss. 1904). There appears to be some conflict under Mississippi law as to the circumstances in which an employee who is driving his employer's vehicle home after work is acting within the scope of his employment. For example, in *Reading & Bates, Inc. v. Whittington*, 208 So. 2d 437, 438 (Miss. 1968), the Court stated that an exception to "the general rule" that hazards encountered by employees going to and from work are not incident to employment, "is where the employer furnishes the transportation." On the other hand, merely five years earlier, the same Court had stated that "[t]he general rule is that

10

a servant using an automobile, *whether belonging to his master or to himself*, in going to and from his place of work, is not at such times engaged in work for his master but acts for his own purposes only." *Miss. Power and Light Co. v. Laney*, 154 So. 2d 128, 134 (1963) (emphasis added).

Having reviewed a number of cases, this Court interprets the current state of Mississippi law as follows. As a general matter, an employee traveling to or from work is not acting within the scope of his employment. *E.g.*, *Aetna Fin. Co. v. Bourgoin*, 174 So. 2d 495, 497 (Miss. 1965). A potential exception to this general rule, is that an employee traveling to or from work in his employer's vehicle *may* be acting within the scope of his employment. *E.g.*, *id.*; *Brown v. Bond*, 1 So. 2d 794, 797-99 (1941). To ascertain whether the fact that the employee is commuting in his employer's vehicle constitutes an exception to the general rule, Mississippi courts consider "whether the vehicle is supplied primarily for the purpose of assisting the master's work or for the purpose of assisting the employee to perform what is essentially his own job of getting to or from work." *Brown*, 1 So. 2d at 799 (quoting RESTATEMENT (SECOND) OF AGENCY § 229).

Mississippi courts have elucidated several factors to assist in this inquiry. If the employer pays the employee for the time spent commuting or requires the employee to use the vehicle, the employee will be found to have been acting within the scope of his employment. *Id.* at 798; *Bourgeois v. Miss. School Supply Co.*, 155 So. 209, 211 (Miss. 1934). Additionally, if the employer induces the employee to sign an employment contract by offering to provide the vehicle as transportation, the employee acts within the scope of his employment while driving the vehicle. *Bourgeois*, 170 Miss. at 211. Indeed, in *Reading & Bates, Inc.* – in which the Court

stated employees driving their employer's vehicle are presumptively acting within the scope of their employment – the employee in question had been induced to sign his employment contract with the promise that he would be paid for his daily commute. 208 So. 2d at 439.

Thus, the Court turns to the facts of this case to determine whether Smith Bros. supplied the truck primarily for its own purposes or instead to assist its employees to travel to and from work.[1] BCC has produced evidence that Smith Bros. provided the truck to assist its employees with their task of getting to and from work and that Smith Bros. did not supply the truck primarily for its own purposes. Hales testified that Smith Bros. did not need to provide transportation to have a sufficient number of workers, but that the vehicle was simply loaned for the employees' convenience. Pl.'s Exh. D at 59. Both Hales and Ducksworth testified that they would have found other ways to get to work if the truck were not provided. *Id.*; Pl.'s Exh. C at 76. Neither Hales nor Ducksworth was being paid during their commute in the Smith Bros. vehicle. Pl.'s Exh. D at 91. Based on this evidence, the Court concludes that BCC has met its burden of establishing that neither Hales nor Ducksworth was acting within the scope of his employment at the time of the collision.

Accordingly, the burden shifts to the Buckley Defendants to offer evidence of a genuine issue of material fact. In their attempt to meet this burden, the Buckley Defendants state "[i]f transportation had not been provided to its employees, Smith Bros.' employees would not have

---

[1] The Buckley Defendants rely in part on the inapposite case of *Travelers Indem. Co. v. Watkins*, 209 So. 2d 630 (Miss. 1968). *Travelers* features facts in which a person who was loaned a truck for an expressly limited purpose deviated from that purpose. Thus, *Travelers* involved the first category of permissive use discussed above. *See ante*, p.6-7. Here, however, the question is not whether Ducksworth's deviation from the permission was a minor one; he had no permission in the first place. Accordingly, the Court relies on the line of cases discussed above, rather than soliciting guidance from cases such as *Travelers*.

been able to get to work. If the workers could not have gotten to work, then Smith Bros. could not have carried out its work." Def.'s Br. at 13. Clearly, this assertion contradicts some of the evidence supplied by BCC. The Buckley Defendants have not substantiated this conclusory assertion with evidence, however. Nor have the Buckley Defendants provided evidence that Smith Bros. used the truck as an inducement to hire employees. As a result, the Court is compelled to find an absence of any genuine issue of material fact and concludes that neither Hales nor Ducksworth was acting within the scope of his employment at the time of the collision. *Little*, 37 F.3d at 1075. Hence, Ducksworth was not an insured under the Umbrella Policy.

Furthermore, given the facts of this case, it seems evident that even if Hales were acting within the scope of his employment while driving the Smith Bros.' truck, it would not necessarily follow that Ducksworth was as well. The Buckley Defendants, in an attempt ostensibly to circumvent this problem, argue that under principles of agency law, Hales could have appointed Ducksworth as an agent of Smith Bros. by giving him permission to drive the truck.[2] Def.'s Br. at 14. In support of this argument, the Buckley Defendants rely on the Restatement of Agency which states that "*[u]nless otherwise agreed* an agent is authorized to appoint another agent for the principal if . . . unforeseen contingency arises making it impracticable to communicate with the principal and making such appointment reasonably necessary for the protection of the interests of the principal entrusted to the agent." RESTATEMENT (SECOND) OF AGENCY § 79 (1958) (emphasis added). Assuming *arguendo* that

---

[2] This argument may also apply to the issue of whether Ducksworth had implied permission to drive the truck, discussed above. *Ante*, p. 6-10.

13

Mississippi courts are bound by this principle, it is of no help to the Buckley Defendants. The undisputed evidence in the record indicates that Smith Bros. prohibited Hales from allowing Ducksworth or any other unlicensed driver from driving the truck. Thus, the "unless otherwise agreed" language is dispositive. As a result, the Court concludes that Ducksworth was not an insured under the Umbrella Policy.

## IV. CONCLUSION

The uncontroverted evidence submitted by BCC establishes that Ducksworth had neither express nor implied permission from Smith Bros. to drive the truck. Moreover, the evidence establishes that Ducksworth was not acting within the scope of his employment at the time of the collision. The Buckley Defendants have alerted this Court's attention to no evidence in the record that creates a genuine issue of material fact. Finding an absence of genuine issues of material fact, the Court holds that BCC is entitled to judgment as a matter of law.

IT IS, THEREFORE, ORDERED AND ADJUDGED that the Plaintiff BCC's motion for summary judgment [Doc. #57] is **granted** and judgment shall be entered in Plaintiff BCC's favor. All other pending motions are ORDERED **denied** as moot.

SO ORDERED AND ADJUDGED on this, the 10th day of February, 2009.

*s/Keith Starrett*
UNITED STATES DISTRICT JUDGE